ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| **FRANKY GONZALEZ RIVERA**<br><br>Parte Demandante<br><br>v.<br><br>**PRESBYTERIAN COMMUNITY HOSPITAL, INC.;<br>FULANOS DE TAL 1-100**<br><br>Parte Demandada | **CIVIL NÚM:**<br><br><br><br><br>**SOBRE:**<br>**PETICIÓN DE ORDEN, DAÑOS.** |

# DEMANDA

**AL HONORABLE TRIBUNAL:**

Comparece la parte demandante, Franky González Rivera (en adelante, "Parte Demandante" o "Franky González"), a través de la representación legal que suscribe, y solicita un interdicto permanente al amparo de 42 U.S.C. § 12188 debido al incumplimiento de Presbyterian Community Hospital, Inc., y Fulanos De Tal 1-100 (en delante de manera individual por su nombre o de manera conjunta "Parte Demandada"), con las disposiciones del Título III de la ley federal conocida como American with Disabilities Act, 42 U.S.C. § 12181 et seq (en adelante nos referimos al estatuto federal como "Ley ADA")[1] y violaciones a la Sección 504 del Rehabilitación Act 29 U.S.C. § 794. Se solicita un interdicto permanente, daños nominales, daños compensatorios y otros remedios al amparo de la Sección 504 del Rehabilitación Act, 29 U.S.C. § 794.

## EL LUGAR DE ACOMÓDO PÚBLICO EN CUESTIÓN

1. Esta es una acción que busca remediar la discriminación ilegal en un lugar de **acomodo público**[2] establecido y conocido en el lugar que se menciona a continuación:

---

[1] El Título III de la Ley ADA obliga a todas las entidades privadas y facilidades comerciales que brindan servicios al público. La obligación impuesta por el Título III consiste en no discriminar en el ofrecimiento de dichos servicios hacia las personas con impedimentos en el disfrute igual y pleno de los bienes, servicios y facilidades, privilegios, ventajas o acomodos en cualquier lugar de acomodo público. El enlace oficial del gobierno de los Estados Unidos con información sobre Titulo III de Ley ADA es: http://www.ada.gov/

[2] El término "public accommodation" o lugar de acomodo público, 42 U.S.C. 12181(7), se define como entidades privadas cuyas operaciones afectan el comercio y específicamente se mencionan los siguientes lugares a modo de ejemplificar lo que es un lugar de acomodo público: hoteles, moteles, hospederías, restaurantes, barras, otros establecimientos que sirvan comida o bebidas, cines, teatros, salas de conciertos y presentaciones, estadios, lugares para exhibiciones o entretenimiento, auditorios, centros de convenciones, salas de presentaciones, lugares de congregación, panaderías, tienda de comestibles, tiendas de ropa, tiendas de herramientas, centros comerciales, otros establecimientos de ventas o renta, lugares de lavado ("laundromat"), secado (dry-cleaning), bancos, barberías, salones de belleza, agencias de viaje, servicios de reparación de zapatos, funerarias, estaciones de gasolina, oficina de un contable o abogado, farmacias, oficinas de seguros, oficina de profesionales de la salud, hospitales, otros establecimiento de servicios, un terminal o estación utilizado para transportación pública, museos, librerías, galerías, otros lugares donde haya exhibiciones públicas o colecciones, parques, zoológicos, parques de diversión y otros lugares de recreación, centro de cuido de infantes ("nursery"), escuelas elementales, secundarias, universidades, o

**HOSPITAL ASHFORD**
DIRECCIÓN: 1451 Ave Dr Ashford, San Juan, 00907, Puerto Rico
Teléfono: (787) 721-2160
Coordenadas: 18.455990059314132, -66.06548236327876

En adelante, nos referiremos a este lugar como "Hospital Ashford", "la Propiedad" el "lugar de acomodo público".

## NECESIDAD DE LA ACCIÓN

2. Esta Petición de interdicto permanente es necesaria por lo siguiente:

    A) Presbyterian Community Hospital, Inc., es dueño, arrendador, arrendatario u operador del acomodo público descrito en el primer párrafo de la Demanda, en consecuencia, es responsable y tiene la facultad de administración y adecuación del Hospital Ashford, interna y externamente.

    B) La parte demandante es consumidor de los bienes y servicios ofrecidos por el Hospital Ashford. Es un visitante usual de la Propiedad pues con regularidad accede a los servicios médicos ofrecidos por el hospital, pues sufrió amputación de su pierna, y le deben hacer curación a la herida que tiene en razón a esta cirugía.

    C) La parte demandada no procuró la eliminación de barreras arquitectónicas en el área de curaciones de la Propiedad.

    D) La parte demandada mantiene en el lugar de acomodo público conocido comercialmente como Hospital Ashford, barreras arquitectónicas en violación de la ADA y a las Guías de Diseño Accesible promulgadas por el Departamento de Justicia de los Estados Unidos, las cuales puede ser accedidas a través del siguiente enlace oficial: https://www.ada.gov/2010ADAstandards_index.htm

    E) La parte demandante visitó el Hospital Ashford para que se le brindaran servicios médicos de curación para la herida que tiene debido a la amputación de pierna, y allí encontró personalmente barreras arquitectónicas en el área de curaciones, dichas barreras se relacionan con su discapacidad.

    F) La parte demandante se (i) encuentra en inminente riesgo de encontrar las barreras arquitectónicas o (ii) sería fútil regresar al lugar de acomodo público en este momento ya

---

escuelas post-graduadas privadas o cualquier otro lugar se provea educación, centro de cuido de niños, centro de cuido de "seniors", refugios de personas sin hogar, lugares donde se da comida, agencias de adopción, o cualquier otro establecimiento donde se dan servicios sociales, gimnasios, spas de salud, boleras, lugares de golf y otros lugares de ejercicio y recreación.

que constituiría un riesgo a la seguridad personal de la parte demandante o equivaldría a someterse a una condición o situación desagradable, humillante y discriminatoria.

G) La parte demandante tiene la intención presente de poder disfrutar los bienes, privilegios, servicios que están disponibles en el lugar de acomodo público una vez las barreras arquitectónicas sean removidas en su totalidad. Sin embargo, se reserva el derecho de regresar al lugar de acomodo público en cualquier momento antes de que se remuevan las barreras arquitectónicas, aunque ello represente someterse a condiciones peligrosas o discriminatorias, con el fin de buscar, identificar y denunciar el discrimen.

## LA PARTE DEMANDANTE

3. La parte demandante es el señor Franky González Rivera, persona natural, cuya dirección postal y residencial es: edificio 5 apartamento 554 Proy 215 unidad residencial Las Margaritas San Juan PR 00915, y su número de teléfono es: (787) 967 – 9045.

4. El señor González Rivera es una persona que sufre de una discapacidad física, que limita sustancialmente varias de sus actividades cotidianas principales, pues sufrió una amputación de pierna como resultado de un trauma, y no puede caminar, por lo tanto, debe movilizarse en silla de ruedas. Normalmente sufre de dolores musculares y calambres, para lo cual toma medicamentos que le ayudan a mermar el dolor, pero le causan mareo, vomito, somnolencia, pérdida de coordinación, cansancio, visión borrosa, y movimientos oculares inusuales.

5. La parte demandante es beneficiaria de los privilegios otorgados por el Departamento de Salud del Gobierno de Puerto Rico. La autoridad ha expedido para beneficio del señor González un rótulo mediante el cual se identifica como persona con impedimentos.

6. La parte Demandante tiene un "disability", según definido por la Ley ADA. 42 U.S.C. § 12102(1)(A).

7. Como se mencionó, El Departamento de Transportación y Obras Públicas del Gobierno de Puerto Rico (DTOP) ha expedido para beneficio de la Parte Demandante un rótulo removible de personas con impedimento físico, de modo que la Parte Demandante pueda utilizar el rótulo para estacionarse en estacionamientos identificados como accesibles o "de impedido".

## LA PARTE DEMANDADA

8. La Parte Demandada está integrada por las siguientes personas naturales o jurídicas:

3

 i. Presbyterian Community Hospital, Inc.: Es dueño, arrendador, arrendatario u operador del acomodo público descrito en el primer párrafo de la Demanda, en consecuencia, es responsable y tiene la facultad de administración y adecuación del Hospital Ashford, interna y externamente.

 ii. Fulanos de Tal 1-100: Estas personas naturales o jurídicas desconocidas son titulares, arrendadores, arrendatarios y operadores de la propiedad que se identifica en el primer párrafo de esta Demanda. Ya que la identidad de estos se desconoce en estos momentos, se enmendará la petición a los fines de acumularlos a este procedimiento civil. En esta Petición, el término "Parte Demandada" incluye también a todos los demandados desconocidos identificados con el nombre ficticio "Fulano de Tal 1-100".

## JURISDICCIÓN Y COMPETENCIA

9. De este procedimiento civil ser en removido al Tribunal de Distrito de los Estados Unidos, se invocada jurisdicción sobre la materia de conformidad con 28 U.S.C. §§ 1331 y 1343 (a)(3) y (a)(4) por violaciones de la ADA.

10. El Tribunal de Primera Instancia tiene jurisdicción original para dilucidar controversias que surgen al amparo del Título III de la *American with Disabilities* Act y la *Rehabilitation Act*.

11. Esta acción civil ha sido presentada ante el foro judicial que ostenta la competencia toda vez que la Propiedad en controversia está ubicada en esta región judicial.

## HECHOS

12. La Propiedad es un lugar de acomodo público según lo definido por la Ley ADA, 42 U.S.C. 12181(7), es un lugar abierto al público cuya operación afecta el comercio por su naturaleza, ya que es un hospital donde se prestan servicios médicos, como los que requiere el demandante: la curación de la herida por una pierna amputada.

13. La Propiedad no es residencial, no es un club privado ni es una iglesia.

14. El señor Franky González visitó el Hospital Ashford para acceder a los servicios médicos ofrecidos por este, y para que se le realizara la curación la herida de su pierna amputada.

15. La parte demandante visitó la Propiedad para eso del 03 de febrero de 2022 y encontró barreras arquitectónicas en su acceso al área de curaciones, como en la puerta, que interfirieron con la capacidad de la parte demandante para usar y disfrutar los bienes, servicios, privilegios y acomodos ofrecidos en la propiedad, pues, el área de curación no es accesible para que una silla de ruedas

4

entre sin dificultades.

16. En consecuencia, el hecho de que la parte demandante tenga una condición de discapacidad (como es una amputación) que la obligue a usar silla de ruedas, y que la Propiedad tenga barreras arquitectónicas tales como unas medidas de espacio limitadas, ocasionó y ocasiona que el señor Franky González tenga que realizar movimientos y posiciones incómodas, e incluso requerir asistencia externa, para intentar movilizarse en la Propiedad.

17. Lo anterior ha causado en la Parte Demandante una profunda incomodidad, un sentimiento de desventaja y discriminación, pues no resulta fácil el sentirse diferente y no poder acceder a un lugar debido a una condición física.

18. El demandante informó sobre las barreras arquitectónicas al Hospital Ashford, y por esta situación, le negaron la prestación del servicio médico de curación para la herida de su pierna amputada. Se resalta, que fue imposible para él ingresar con su silla de ruedas al área de curación.

19. Además, y de manera totalmente independiente a lo anterior, la parte demandante invoca legitimación como persona que tiene la intención de regresar a la propiedad con el propósito expreso de buscar e identificar barreras arquitectónicas que haya en la Propiedad en el futuro. El fin de la búsqueda e identificación de las barreras arquitectónicas será con el fin de: (1) denunciar barreras adicionales que se encuentren en el futuro; (2) verificar el cumplimiento o no cumplimiento de cualquier orden que dicte este tribunal sobre eliminación de barreras arquitectónicas.

20. Se alega afirmativamente la existencia de legitimación activa como *tester* de derechos civiles, según alegado en este párrafo, conforme a la norma vinculante en esta jurisdicción establecida en Suarez-Torres v. Panadería y Repostería España, Inc., No. 18-1618 (1st Cir. Feb. 17, 2021), donde se estableció que no es necesario que una persona con discapacidades sea un "cliente bona fide" del lugar de acomodo público para tener standing para reclamar derechos bajo ADA. Un *tester* de derechos civiles es una persona que tiene la intención especifica de buscar, identificar y denunciar el discrimen, aunque ello represente someterse al discrimen o a condiciones poco seguras.  En Suarez-Torres v. Panadería y Repostería España, Inc., el Primer Circuito estableció inequívocamente la existencia de legitimación activa de *tester* al determinar:

> Panaderia España contends that, as testers, appellants are unable to establish an injury because their only motivation in visiting the bakery was to detect ADA violations.
>
> We have not previously addressed the impact of a plaintiff's status as a "tester" on her ability to establish standing under the ADA. However, the circuits that have considered this issue have uniformly concluded that an individual's "tester" status does not defeat

5

standing. As the Eleventh Circuit explained in <u>Houston v. Marod Supermarkets, Inc</u>., the ADA guarantees the right of any individual to be free from "disability discrimination in the enjoyment of [public places of accommodation] regardless of [the individual's] motive for visiting the facility." 733 F.3d at 1332. Congress did not limit the protections of the ADA to "clients or customers" or otherwise impose a bona fide visitor requirement. Id. at 1332-34 (contrasting 42 U.S.C. §§ 3604(a), and 12182(b)(1)(A)(iv), which do contain such requirements). Hence, such limitations should not be read into the ADA. Id. We agree with this analysis. **Accordingly, we conclude that appellants' status as testers does not defeat standin**g.

<u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, No. 18-1618 (1st Cir. Feb. 17, 2021) (citas internas omitidas) (énfasis nuestro).

21. En su capacidad de cliente bona fide, la Parte Demandante se ha sentido, y se siente hoy en día, disuadida o desalentada de visitar la propiedad porque tiene conocimiento de las barreras ilegales que limitan e interfieren con su acceso a la Propiedad, específicamente al área de curaciones. La parte demandante conoce los bienes y servicios ofrecidos en la propiedad, y regresará una vez se eliminan las barreras. La parte demandante sabe que sería inútil enfrentar estas barreras porque enfrentarlas equivale a someterse a una situación humillante, discriminatoria y peligrosa. Todas las barreras aquí descritas están directamente relacionadas con la discapacidad de la Parte Demandante e interfieren su completo y acceso igual acceso. No obstante, a pesar de sentirse disuadida, tiene la intención de regresar para buscar, identificar y denunciar el discrimen que existe en esa Propiedad.

22. A base de sus observaciones personales, y a base de su experiencia como persona con limitaciones que ha visto cientos de lugares accesibles y no accesibles a través de su vida, la Parte Demandante alega afirmativamente que existen las siguientes barreras arquitectónicas de *diseño* en la Propiedad relacionadas a su discapacidad y sus limitaciones de movilidad:

**ACCESO A LA PROPIEDAD: ACCESO A BIENES Y SERVICIOS**

a) **La entrada a el área de curaciones**: Se requiere el cumplimiento de las medidas exigidas por la Ley ADA en las puertas, entradas y portones para que permitan el paso de los usuarios, en este caso, personas discapacitadas, en silla de ruedas, a la Propiedad. En el caso en concreto, la puerta de entrada no cumple con dichos requisitos, pues la silla de ruedas que usa el demandante para movilizarse no puede ingresar, debido a que el espacio es muy estrecho, las puertas accesibles deben proporcionar por lo menos 32" de ancho de espacio libre ADAAG 2010 <u>§404.2.3.</u>, pero lamentablemente, la puerta para ingresar al área de curaciones no cuenta con estas medidas. Lo anterior, ocasionó que el Sr. González

6

   Rivera no pudiera recibir los servicios médicos que requería, pues no pudo recibir curación en la herida de su pierna, ya que como se mencionó, no logró acceder al área de curaciones del Hospital Ashford debido a las medidas que tiene la puerta de ingreso a esta área.

b)  Además, la puerta que permite el acceso al área de curaciones no tiene los letreros que indiquen que esa es una entrada accesible. ADAAG 2010 § 216.6. Posible solución: Hacer todas las entradas accesibles y/o colocar la rotulación requerida por la reglamentación aplicable.

c)  Esta puerta tampoco posee un dispositivo asistido por energía (Power-assisted devices) ADAAG 2010 §404.3, estas solo poseen letreros de "empuje". Todo lo anterior, hace que el demandante deba usar demasiada fuerza manual para abrir la puerta, dificultando su acceso porque como se menciona, el demandante no puede caminar debido a la amputación de su pierna y por consiguiente este usa silla de ruedas, de esta manera es claro que se le dificulta utilizar demasiada fuerza para abrir la puerta y mover la silla de ruedas al mismo tiempo. Posible solución: Instalar un dispositivo asistido por energía en la puerta de entrada a el área de curaciones.

23. Las barreras identificadas en el párrafo anterior son solo aquellas que la Parte Demandante conoce personalmente a base de su experiencia y sentido común como persona con discapacidades, no a base de pruebas científicas o periciales. La totalidad de las barreras existentes en la Propiedad, incluyendo las encontradas y otras no descubiertas al momento, son consecuencias de la negligencia del demandado, es decir, la falta de acceso completo, libre y espontaneo a la propiedad, se deben a la falta de previsión de la parte demandada. Por lo anterior, la intención de la Parte Demandante es utilizar los mecanismos de descubrimiento de prueba para buscar, identificar y señalar todas aquellas barreras arquitectónicas relacionadas con la discapacidad de la Parte Demandante para que el acceso a la Propiedad sea completo e igualitario. Luego de identificadas las barreras, la Parte Demandante se propone solicitar al tribunal enmendar las alegaciones para conformar las mismas a la prueba descubierta sobre violaciones a la ADAAG ahora desconocidas.

24. Es claro que, al no poder ingresar al área de curaciones, el Sr. González Rivera no pudo recibir el tratamiento que requería, es decir, no se realizó la curación de su herida, lo cual implica un riesgo muy alto para el demandante, pues su herida se puede infectar, además, porque es una herida bastante grande, pues amputaron su pierna. En otras palabras, la Parte Demandada afectó gravemente al demandante, al no prestarle el servicio de salud que requería y al cual tiene derecho.

25. A base del incumplimiento histórico y nivel de incumplimiento, se cree que la Parte Demandada jamás ha reconocido que los estándares de accesibilidad de ADA son extremadamente importantes. No son detalles menores o reglas exigentes, sino más bien, son esenciales para garantizar la verdadera accesibilidad. Una puerta que es demasiado estrecha puede hacer la diferencia entre acceder a un lugar o no, como ocurrió en el caso en concreto.

26. La Parte Demandada sabía, o debía saber, que la Propiedad era y es inaccesible; que las condiciones de la Propiedad violan la ley federal e interfieren (o niegan) el acceso a los discapacitados. Además, la Parte Demandada tiene los recursos financieros para eliminar estas barreras de la Propiedad (sin mucha dificultad o gasto), y hacer que esta sea accesible para la Parte Demandante. Hasta la fecha, sin embargo, la Parte Demandada se niega a eliminar esas barreras.

27. La Parte Demandada posee el suficiente control y autoridad para modificar la Propiedad, eliminar las barreras arquitectónicas mencionadas y cumplir con la reglamentación federal aplicable. La Parte Demandada no ha eliminado tales barreras y no ha modificado la Propiedad para cumplir con los estándares de accesibilidad aplicables. La Parte Demandada, de manera intencional, ha mantenido la Propiedad en su estado actual y se ha abstenido intencionalmente de alterar la Propiedad para que cumpla con los estándares de accesibilidad.

28. La Parte Demandante alega afirmativamente que la presencia continua de barreras en la Propiedad es tan obvia y abierta que establece la intención discriminatoria de la Parte Demandada. La naturaleza de las desviaciones a los estándares federales no sugiere incumplimiento con la reglamentación debido a mera negligencia o un error humano. El incumplimiento existente es tan sustancial que es obvio para un observador casual que no tiene pericia en los estándares de diseño accesible o que no tiene experiencia con barreras arquitectónicas por no tener una discapacidad. Es a base de esto que la Parte Demandante cree, y por tanto alega afirmativamente, que la intención discriminatoria incluye la negativa consciente y ponderada de no adherirse a normas de construcción relevantes; el menosprecio hacia los planos de construcción y permisos emitidos para la Propiedad; la decisión concienzuda de mantener el diseño arquitectónico (tal como existe actualmente) en la Propiedad; la decisión de no eliminar las barreras arquitectónicas mantenerla en estado de incumplimiento motivado por fines de lucro. Se alega afirmativamente que la Parte Demandada ha querido mantener una competencia desleal con sus competidores al no invertir dinero en cumplir con el mandato federal a pesar de que sus competidores si tienen que invertir en dicho cumplimiento, lo que afecta a otros actores económicos. Las barreras arquitectónicas en la

Propiedad no son interrupciones aisladas (o temporales) de acceso por mantenimiento o reparaciones.

29. Teniendo en cuenta el incumplimiento histórico de la Parte Demandada con la ADAAG, la Parte Demandante cree, y por lo tanto alega, que la Parte Demandada no tiene políticas, procedimientos o documentos internos en relación con esfuerzos de cumplimiento de ADA en la Propiedad.

## PRIMERA CAUSA DE ACCIÓN
### American with Disabilities Act de 1990

30. La Parte Demandante incorpora las alegaciones contenidas en los párrafos anteriores.

31. El Título III de la ley ADA dispone esencialmente que ningún individuo será tratado de manera desigual por razón de discapacidad en el pleno y equitativo disfrute (o uso) de bienes, servicios, instalaciones, privilegios y acomodos ofrecidos por cualquier persona ya sea titular, arrendador, arrendatario u operador de un lugar de acomodo público. 42 U.S.C. § 12182 (a).

32. La Parte Demandada discriminó contra la Parte Demandante al negarle un disfrute y acceso pleno e igual a los bienes, servicios, privilegios y acomodos de la Propiedad durante cada visita y cada ocasión en que la Parte Demandada decidió no visitar el lugar.

33. La Ley ADA establece diferentes estándares dependiendo de cuándo se construyó la estructura física y si la instalación ha sido alterada desde el 26 de enero de 1992. 28 CFR §§ 36.401, 36.402. Las propiedades "existentes" antes del 26 de enero de 1992 tienen que eliminar las barreras de acceso de las personas con discapacidades cuando la eliminación sea "fácilmente alcanzable". 42 U.S.C. § 12182 (b) (2) (A) (iv); 28 CFR § 36.304. Estructuras diseñadas y construidas para ser ocupadas por primera vez después del 26 de enero de 1993 deben ser accesibles para personas con discapacidades a menos que la entidad pueda demostrar que es "estructuralmente poco práctico". 42 USC § 12183 (a). Finalmente, las alteraciones posteriores al 26 de enero, 1992 debe hacerse para garantizar que, en la "máxima extensión posible", las porciones alteradas de las instalaciones sean accesibles. 28 CFR § 36.402 (a) (1).

34. Los estándares de diseño, ADAAG, se publicaron por primera vez en 1991 y están codificados en 28 CFR Parte 36, Apéndice A ("ADAAG de 1991"). Los más recientes estándares de diseño ADA fueron publicado por primera vez en 2010 y se codificaron en 28 CFR Parte 36, Subparte D (La ADAAG de 2010). Ambas normas están disponibles en www.ada.gov. Todas las construcciones nuevas y modificaciones comenzadas el 15 de marzo de 2012 o después deben cumplir con la ADAAG de 2010.

35. La Parte Demandante cree que la Propiedad fue diseñada para ser ocupada por primera vez después del 26 de enero de 1993. Ver 28 CFR § 36.401.

36. La Parte Demandante cree que la Propiedad está ubicada en un lugar que fue construido después del 26 de enero de 1993. Ver 28 CFR § 36.401.

37. La Parte Demandante cree que la Propiedad fue "alterada" luego del 26 de enero de 1993. El término "alterada" o "alteraciones" incluye, pero no se limita a, remodelación, renovación, rehabilitación, restauración histórica, cambios o reordenamiento en partes o elementos estructurales, cambios o reordenamiento en la configuración de paredes y cambios en los mostradores, mesas u objetos dentro de la Propiedad.

38. En la alternativa, si la Propiedad no fue diseñada y construida para ser ocupada por primera vez después de 26 de enero de 1993, la Propiedad es una instalación existente en cuyo caso hay una obligación de eliminar barreras arquitectónicas que afectan a las personas con discapacidad en la medida que la eliminación sea "fácilmente alcanzable". 42 USC § 12182 (b) (2). La ley ADA establece que, al evaluar si la eliminación de barreras es "fácilmente alcanzable", los factores a considerar incluyen los" recursos "de la instalación, 42 USC § 12181 (9) (b), que incluye "los recursos financieros generales de cualquier empresa matriz o entidad ", 28 CFR § 36.104. Si la Parte Demandada sostiene que no tiene los recursos financieros a modo de defensa afirmativa para excusar su incumplimiento, la Parte Demandante no acepta dichos pretextos y se propone utilizar los mecanismos de descubrimiento de prueba conforme a 28 C.F.R. § 36.104.

### NO ELIMINAR LAS BARRERAS EN UNA INSTALACIÓN EXISTENTE

39. La ADA prohíbe específicamente no eliminar las barreras arquitectónicas en instalaciones existentes cuando tal eliminación es fácilmente alcanzable. 42 USC § 12182 (b) (2) (A) (iv); 28 C.F.R. § 36.104.

40. Cuando una entidad puede demostrar que la eliminación de una barrera no se puede lograr fácilmente, esa entidad tiene que procurar que los bienes, servicios, privilegios y acomodos se hagan disponibles mediante mecanismos alternos, si estos métodos son fácilmente alcanzables. § 12182 (b) (2) (A) (v).

41. Aquí, la parte Demandante alega que la Parte Demandada puede eliminar fácilmente las barreras arquitectónicas en la Propiedad sin mucha dificultad o gasto, y que la Parte Demandada viola la ley ADA al no eliminar esas barreras, cuando fácilmente podía y puede hacerlo.

42. En la alternativa, si no es "fácilmente alcanzable" para la Parte Demandada eliminar las barreras

10

arquitectónicas, la Parte Demandada violó la ADA al no hacer disponibles sus servicios a través de métodos alternativos que fuesen fácilmente alcanzables.

## NO DISEÑAR Y CONSTRUIR UNA INSTALACIÓN ACCESIBLE

43. La Propiedad fue diseñada y construida (o ambos) después del 26 de enero de 1992 - activando los requisitos de acceso bajo el Título III de la ADA y la reglamentación promulgada por el Departamento de Justicia de los Estados Unidos.

44. La Parte Demandada violó la ley ADA al diseñar y construir (o ambos) la Propiedad en una manera que no era fácilmente accesible para el público con discapacidad física, incluida la Parte Demandada, cuando hacerlo era estructuralmente práctico.

## NO HACER ACCESIBLE UNA INSTALACIÓN ALTERADA

44. La Parte Demandante cree, y por tanto alega afirmativamente, que la Propiedad ha sido alterada (según el término "alteración" es definido por §§ 202.1, §202.3, 202.4) después del 26 de enero de 1992.  28 CFR §36.403; 49 CFR §37.43.

45. La ADA también requiere que las instalaciones se alteren de forma tal que sea fácilmente accesible para las personas con discapacidad en la medida máxima posible. 42 U.S.C. § 12183 (a) (2).

46. La Parte Demandada alteró la Propiedad de una manera que violó la ADA y que la hizo no fácilmente accesible al público con discapacidad física, incluyendo a la Parte Demandante.

## BARRERAS NO ESTRUCTURALES: POLÍTICAS Y PROCEDIMIENTOS

47. La ley ADA también requiere hacer modificaciones razonables en las políticas, prácticas o procedimientos, cuando es necesario para dar igual acceso a los servicios, bienes, privilegios o acomodos a las personas con discapacidades, a menos que la entidad pueda demostrar que hacer tales modificaciones alterarían fundamentalmente su naturaleza. 42 USC § 12182 (b) (2) (A) (ii).

48. Aquí, la Parte Demandada violó la ley ADA al no hacer modificaciones razonables en sus políticas, prácticas o procedimientos en la Propiedad, cuando estas modificaciones son necesarias para permitir (sin alterar fundamentalmente la naturaleza del lugar de acomodo público) el igual acceso a los bienes, servicios, instalaciones, o acomodos.

## SEGUNDA CAUSA DE ACCIÓN
## REHABILITATION ACT DE 1973
### (Sección 504, 29 U.S.C. § 701 et seq.)

11

49. Se incorporan todos los párrafos anteriores por referencia.

50. La Sección 504 dispone: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a).

51. La Parte Demandante es una persona protegida por la Sección 504 ya que es una persona con una discapacidad comprobada.

52. La Parte Demandante es una persona elegible para recibir los beneficios y servicios que se hacen disponibles al público en la Propiedad.

53. El CARES Act autoriza a la Small Business Administration (SBA) a proveer asistencia económica temporera a organizaciones elegibles. Específicamente, a Sección 1102 del CARES Act estableció el programa conocido como Paycheck Protection Program (PPP), que amplió la autoridad de SBA para garantizar prestamos bajo la sección 7(a) del Small Business Act. La Sección 1110 del CARES Act amplió a su vez la autoridad de SBA para distribuir prestamos conocidos como Injury Disaster Loans (EIDL) bajo la Sección 7(b)(2) del Small Business Act. En resumen, esto significa que se pueden tomar un préstamo que luego no se tiene que repagar.

54. Por supuesto, el recibo directo de fondos federales supone unas obligaciones para los beneficiarios. Por ejemplos, múltiples leyes de derechos civiles imponen obligaciones a las personas que reciben fondos federales. Entre ellas, el Titulo VI de la Ley de Derechos Civiles de 1964 y, en lo aquí relevante, la Sección 504 del Rehabilitation Act, que prohíbe el discrimen por razón de discapacidad. De igual manera, la reglamentación de la SBA también les prohíbe a entidades que reciben fondos federales discriminar a base de ciertas categorías protegidas, incluyendo "handicap" o impedimento. 13 C.F.R. Sección 112 que implementa el título VI; 13 C.F.R. Sección 117, que implementa la Age Discrimination Act; of 13 C.F.R. Sección 113, Subparte A, por mandato reglamentario, las entidades que reciben fondos federales tienen una obligación de mantener récords y producir reportes de cumplimiento con estos requisitos cuando ello sea solicitado; deben también permitir el acceso a estos récords y a las facilidades. Las personas también pueden hacer querellas con la SBA, y si la investigación refleja incumplimiento con los requerimientos aplicables, la SBA puede suspender los beneficios, acelerar el repago de la deuda o requerir la devolución de los fondos federales.

55. La Sección 504 dispone: "No otherwise qualified individual with a disability in the United States

12

. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .." 29 U.S.C. § 794(a).

56. La Parte Demandante es una persona protegida por la Sección 504 ya que es una persona sustancialmente limitada en su capacidad de movimiento al presente y también para eso del 29 de julio de 2020 y para eso del 21 de enero de 2020.

57. La Parte Demandante es una persona elegible para recibir los beneficios y servicios que se hacen disponibles al público en la Propiedad.

58. Durante el pasado año, y al presente, la Parte Demandada y la Propiedad recibió fondos federales como parte de sus programas y actividades. Estos fondos federales, entre otros, a base de los fondos del CARES Act y el PPP antes discutidos. Se cree, y será objeto de descubrimiento de prueba, que también se han recibido fondos federales de otras fuentes y programas federales.

59. Durante los cuatro años anteriores, y también durante el año anterior, la Parte Demandada y la Propiedad, operó un programa o actividad cubierto por la Rehabilitation Act y también recibió fondos federales como parte de sus programas y actividades.

60. La conducta de la Parte Demandada violó los derechos de la Parte Peticionaria bajo la Rehabilitation Act al excluir a la Parte Demandante o negarle beneficios solamente por razón de su discapacidad.

61. La conducta de la Parte Demandada demuestra una indiferencia deliberada hacia los derechos de la Parte Demandante porque la Parte Demandada sabía o debía saber de sus obligaciones legales bajo la legislación federal, más ignoró las misma de manera consciente.

62. La Parte Peticionaria sufrió angustia emocional y daños debido a la violación de la Rehabilitation Act por parte de la Parte Demandada.

63. De conformidad con la Sección 505 de la Rehabilitation Act, la Parte Demandante tienen derecho a una compensación por sus daños, costas, gastos de litigio y honorarios de abogado.

64. Conforme a lo resulto por el Tribunal Supremo de los Estados Unidos en Uzuegbunam v. Preczewski, 592 U.S. ___ (2021), 2021 WL 850106 (March 8, 2021),6 se solicita la imposición de daños nominales. En Uzuegbunam, se le prohibió a un estudiante predicar en el campus de la Universidad de Georgia cuando este era estudiante. En una decisión de 8-1 en Uzuegbunam, el Tribunal Supremo de los Estados Unidos concluyó que Chike Uzuegbunam podía reclamar daños nominales al Georgia Gwinnett College, aún cuando la universidad cambió su política

13

discriminatoria en respuesta a la acción civil incoada por este. El juez Clarence Thomas fue el autor de la opinión mayoritaria y los jueces Samuel Alito, Stephen Breyer, Amy Coney Barrett, Neil Gorsuch, Elena Kagan, Brett Kavanaugh y Sonia Sotomayor también se unieron a la opinión mayoritaria, que puso fin a la práctica de "tactical mootness" en el contexto de las causas de acción federal. Esta práctica consiste en alegar que una violación de derechos se ha tornado académica con el fin luego solicitar la desestimación de la totalidad de la demanda. Si bien un reclamo de interdicto puede tornarse académico si se cumplen todos los requisitos de la doctrina y sus excepciones, el reclamo de todas maneras puede quedarse vivo mediante un reclamo de daños nominales. Los daños nominales representan una victoria concreta para el reclamante y sirven además como base para determinar quién es la parte prevaleciente en el procedimiento civil. En este caso, se solicita la imposición de daños nominales bajo la (i) ADA y (ii) bajo la Rehabilitation Act.

## REMEDIOS LEGALES SOLICITADOS

**POR TODO LO CUAL**, la Parte Demandante muy respetuosamente solicita los siguientes remedios legales:

A. Una sentencia declaratoria disponiendo que la parte Demandada ha violado los requisitos de la Rehabilitation Act de 1973 y el Título III de la ADA y la reglamentación de implementación relevante de la ADA; y que la Propiedad no es completamente accesible y utilizable de manera independiente para personas con movilidad limitada como la Parte Peticionaria;

B. Un interdicto estatuario permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la Parte Demandada a que tome todas las medidas necesarios para eliminar las barreras arquitectónicas descritas anteriormente y para que sus instalaciones cumplan con los requisitos establecidos en la ADA y sus reglamentos de implementación, y así sus instalaciones sean totalmente accesibles y de forma independiente, sean accesibles por personas con movilidad limitada, y que además ordene que el tribunal retendrá jurisdicción por un período para supervisar que la Parte Demandada cumpla con los requisitos relevantes de la ADA para asegurarse que la Parte Demandada haya adoptado y siga una política institucional que de hecho haga que la Parte Demandada permanezca totalmente en cumplimiento con la ley.

C. En caso de que la Parte Demandada continúe su condición discriminatoria, se solicita

de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 que se ordene el cierre y clausura de la Propiedad como medida para detener la condición discriminatoria hasta tanto la Parte Demandada haya acreditado de manera fehaciente a satisfacción del tribunal que se ha eliminado el discrimen.

D. Daños compensatorios al amparo de la Rehabilitation Act.

E. Daños nominales al amparo de la Rehabilitation Act y la ADA, según resulto Uzuegbunam v. Preczewski, 592 U.S. ___ (2021).

F. Pago de los costos de la acción y gastos de litigio, de conformidad con 42 USC § 12205.

G. Pago de honorarios razonables de abogados no bajo las Reglas de Procedimiento Civil de Puerto Rico, sino de conformidad con lo dispuesto en 42 U.S.C. § 12205 y 28 CFR § 36,505 y su jurisprudencia vinculante interpretativa.

H. La provisión de cualquier otro remedio que sea justo y propio.

**SOMETIDO RESPETUOSAMENTE**.

Hoy 24 de mayo de 2022

          **Velez Law Group LLC**
          División Derechos Civiles

          f/José Carlos Vélez Colón
          Lic. José C. Vélez Colon
          RUA 18913
          Condominio Midtown
          421 Ave Muñoz Rivera #205
          San Juan, PR 00918-3115
          vlg@velezlawgroup.com
          T.: (787)-254-8267

          Abogado de la Parte Demandante